IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

JAMES MURRAY,

                            Plaintiff,

        v.                              Civil Action No.
                                        9:05-CV-01579 (FJS/DEP)

GLENN S. GOORD, ROY A. GIRDICH,
THEODORE ZERNIAK, TIMOTHY RAMSDELL,
JEREMY McGRAW, and BRUCE FORGOE,

                            Defendants.

─────────────────────────────────────────

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

JAMES MURRAY, *pro se*
95-A-4417
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

FOR DEFENDANTS:

HON. ANDREW M. CUOMO            CHARLES J. QUACKENBUSH, ESQ.
Attorney General of the        Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff James Murray, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, commenced this action pursuant to 42 U.S.C. § 1983, complaining of a violation of his civil rights at the hands of prison officials.[1]  In his complaint, Murray asserts that defendants forced him into a double cell with another inmate who had threatened him, thereby exposing him to risk of harm, and that as a result of defendants' actions he was assaulted by his cellmate.  Murray contends that by their actions defendants subjected him to cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution, and seeks recovery of compensatory and punitive damages.

Currently pending before the court is a motion for summary judgment filed on behalf of the six defendants named in Murray's complaint.  In their motion, defendants seek dismissal of plaintiff's claims on the grounds that plaintiff's claims are procedurally barred as both untimely and based on his alleged failure to exhaust available administrative remedies before commencing suit, and in any event are lacking in merit, and additionally

---

[1]     Plaintiff is no stranger to litigation, having commenced six previous actions in the Northern, Western and Southern Districts of New York, as referenced in his complaint, as well as an additional one not mentioned, *Murray v. Wissman, et al.,* No. 9:05-CV-1186 (GTS/RFT) (N.D.N.Y., filed 2005).  *See* Complaint (Dkt. No.  1) ¶ 5.

2

asserting that defendants are entitled to qualified immunity from suit.  For the reasons set forth below I recommend a finding that while defendants have effectively waived both of the procedural grounds raised in support of their motion, plaintiff's claims are subject to dismissal on the merits as a matter of law.

I.    BACKGROUND [2]

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS") as a result of a 1995 conviction entered in Westchester County for sodomy, robbery and assault.  Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 48-3) ¶ 1.[3]  At all times relevant to his claims in this action, plaintiff was designated to Upstate Correctional Facility ("Upstate"), a maximum security prison comprised of special housing unit ("SHU") cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day.  *See generally Samuels v. Selsky*, No. 01-CIV.

---

[2]    In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).  It should be noted, however, that many if not most of plaintiff's allegations are sharply contested by defendants.

[3]    As will be more fully discussed, the facts set forth in defendants' Local Rule 7.1(a)(3) Statement are deemed admitted by virtue of plaintiff's failure to respond to defendants' motion.  *See* pp. 9 - 11, *post*.

8235, 2002 WL 31040370, at \*4 n. 11 (S.D.N.Y. Sept. 12, 2002); *see also* Quinn Decl. (Dkt. No. 48-4) ¶ 3.  Upstate has the capacity to house approximately 1500 inmates, the majority of whom are housed in five hundred and ninety cells designed for double-bunking, while the others are assigned to single occupancy cells.  Quinn Decl. (Dkt. No. 48-4) ¶ 4.

On November 18, 2002 corrections officials at Upstate were ordered to place plaintiff and another inmate, Willie Bradley, together into a double cell.  Zerniak Decl. (Dkt. No. 48-5) ¶ 10; Ramsdell Decl. (Dkt. No. 48-7) ¶ 9.  Prior to that directive Murray and Bradley, both of whom had previously expressed their distaste for double celling, were cleared by security staff at Upstate for compatibility, following an established protocol prescribed for making that determination.  Zerniak Decl. (Dkt. No. 48-5) ¶¶ 7-9; Ramsdell Decl. (Dkt. No. 48-7) ¶¶ 6-8; *see also* Quinn Decl. (Dkt. No. 48-4) ¶¶ 7-8.

Utilizing approved procedures for inmate movement to effectuate the ordered cell insertion, corrections workers restrained both Bradley and Murray and placed first Bradley, and then Murray, into the cell, following which their restraints were removed. Zerniak Decl. (Dkt. No. 48-5) ¶¶ 12-19; Ramsdell Decl. (Dkt. No. 48-7) ¶¶ 11-18.  Shortly after being freed from their restraints, the two inmates began fighting.  Zerniak Decl. (Dkt. No. 48-5) ¶ 19; Ramsdell Decl. (Dkt. No. 48-7) ¶ 18.  The two were promptly

ordered by prison officials to separate, which they did, at which point they were restrained and removed from the cell.  Zerniak Decl. (Dkt. No. 48-5) ¶ 20; Ramsdell Decl. (Dkt. No. 48-7) ¶ 19.

Plaintiff was subsequently examined by a prison nurse, who reported observing several scrapes on his body but with no bleeding, fractures or other significant injuries.  Smith Decl. (Dkt. No. 48-8) ¶ 5.  Plaintiff was again seen by medical staff on the next day, on November 19, 2002, complaining of a bump on his head and bruising and swelling to his penis and testicle; no treatment was directed on that occasion.  *Id.* ¶ 6.  Plaintiff was taken to the prison infirmary for a second time on November 19, 2002, for injuries suffered in connection with another incident described by him as "I was horse playing with a friend is all"; on that occasion, plaintiff demonstrated full range of motion in all extremities.  *Id.* ¶ 7.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on December 19, 2005.  Complaint (Dkt. No. 1).  As defendants, plaintiff's complaint names six past or current employees of the DOCS, including Glenn S. Goord, the former DOCS Commissioner; Roy A. Girdich, the Superintendent at Upstate; Corrections Sergeant Theodore Zerniak; and Corrections Officers Timothy Ramsdell,

Jeremy McGraw and Bruce Fregoe.[4]  *Id.*  Plaintiff's complaint purports to assert three causes of action, though all relate to alleged abridgement of his Eighth Amendment right to be free of cruel and unusual punishment, alleging the use of excessive force in injecting him into a double cell with Bradley and defendants' failure to protect him from that individual.  *Id.* Defendants have answered, generally denying plaintiff's allegations and interposing various affirmative defenses.[5]  Defendants' Answer (Dkt. No. 23).

On August 1, 2008, defendants moved for summary judgment dismissing plaintiff's complaint.  Dkt. No. 48.  In their motion, defendants argue that plaintiff's claims are procedurally barred by the applicable statute of limitations as well as by virtue of plaintiff's failure to exhaust available administrative remedies, and additionally assert that plaintiff's claims are legally deficient as a matter of law, and that defendants are shielded from suit by qualified immunity.  Plaintiff has failed to oppose defendants' motion for summary judgment, despite having received a two-

---

[4]  Plaintiff incorrectly identified Fregoe as "Forgoe" in his complaint.  References to Jeremy McGaw are also erroneous and should be "Jamie McGraw."

[5]  Superintendent Girdich was not listed as a party on the answer filed on May 18, 2007.  On May 30, 2007, however, I granted defendant Girdich's request that the May 18, 2007 answer be deemed to have been also submitted on his behalf.  Dkt. No. 24.

month extension of his time to respond.[6]  Dkt. No. 50.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation to the assigned district judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the

---

[6]      On February 13, 2009, nearly four months following expiration of the extended deadline, plaintiff made a second request for additional time to respond to defendants' motion for summary judgment.  Dkt. No. 53.  That request was denied, Dkt. No. 53, and appeals of that denial to both Senior District Judge Frederick J. Scullin, Dkt. No. 54, and the United States Court of Appeals for the Second Circuit, Dkt. No. 56, have now been decided.  Dkt. Nos. 59, 60.

outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A moving party seeking summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.  Plaintiff's Failure to Oppose Defendants' Motion

Before turning to the merits of defendants' summary judgment motion, a threshold issue to be addressed is the legal significance, if any, of his failure to oppose the motion, and specifically whether that default automatically entitles defendants to dismissal of plaintiff's complaint.

This court's rules provide that

[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3).  Undeniably, *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions.  *See Jemzura v. Public Serv. Comm'n,* 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.)  Despite this measure of deference, the failure of an unrepresented plaintiff to oppose a summary judgment motion does not preclude the court from deciding the motion.  *Robinson v. Delgado*, No. 96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski*, No. 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980 F. Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  As can be seen by the face of Local Rule 7.1(b)(3), however, before summary judgment can be granted under such circumstances the court must be satisfied that the motion is facially meritorious.  *See Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 231-32 (N.D.N.Y. 2001) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences.  By opting not to submit papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this district have

routinely invoked Local Rule 7.1(a)(3) and its predecessor, Local Rule

7.1(f), deeming facts set forth in a statement of material facts not in dispute

to have been admitted based upon an opposing party's failure to properly

respond to that statement.[7]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-

CV-611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2000) (McCurn, S.J.)

(listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214

F.3d 275, 292 (2d Cir. 2000), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 623

(2000) (discussing district courts' discretion to adopt local rules like

7.1(a)(3)).  I recommend that the court follow this well-established practice

and, notwithstanding plaintiff's *pro se* status, accept defendants' assertion

of facts as set forth in their Local Rule 7.1(a)(3) Statement as

uncontroverted, in light of plaintiff's failure to respond to that statement,

when reviewing defendants' motion for facial sufficiency.[8]

C.    Statute of Limitations

As a threshold matter defendants assert that plaintiff's claims are

barred by the governing statute of limitations.  Noting that plaintiff's

---

[7]     Local Rule 7.1(a)(3) provides, "The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *See* N.D.N.Y.L.R. 7.1(a)(3).

[8]     Included among defendants' motion papers was the notice required by this court's local rules, *see* N.D.N.Y.L.R. 56.2, advising plaintiff as a *pro se* litigant, of the consequences of failing to respond to the motion.  *See* Dkt. No. 48-12.

complaint was not filed with the court until December 19, 2005, and addresses claims arising out of an incident occurring on November 18, 2002, more than three years prior to commencement of suit, defendants assert that his complaint is untimely.

Consistent with the Supreme Court's pronouncement that in actions brought under 42 U.S.C. § 1983 the applicable limitations period is derived from the general or residual statute of limitations for personal injury actions under the laws of the forum state, *see Owens v. Okure,* 488 U.S. 235, 249-50, 109 S. Ct. 573, 582 (1989), plaintiff's claim in this action is governed by the three-year statute of limitations which applies in New York to personal injury claims of an otherwise unspecified nature.  *See* N.Y.C.P.L.R. § 214(5) (McKinney's 2003); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (quoting *Owens*); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995); *Lugo v. Senkowski*, 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000) (Kahn, J.) (citing *Pinaud* and *Owens*).  Applying this general rule to the circumstances of this action, it would appear that plaintiff's claims are indeed time-barred.

Apparently recognizing the facial untimeliness of his complaint, dated December 15, 2005, plaintiff added the following note:

Note: I sent complaint [sic] before on November

12

> 17th 2005 *see* Notarized Affirmation of Service
> enclosed herewith & Affirmation But I know it didn't
> get to court since I didn't get advance mail receipt
> nor case # sheet from court.  So I am doing it over.

*See* Complaint (Dkt. No. 1) at p. 6.  Accompanying plaintiff's complaint is

an affirmation elaborating on the reasons for the delay in resubmitting his

complaint and an affidavit of mailing of the original complaint on November

17, 2005.  *See* Dkt. No. 1-2.

If plaintiff's complaint indeed was mailed on November 17, 2005,

then he would be entitled to the benefit of the prison mailbox rule

recognized in this Circuit and elsewhere as controlling for purposes of

applying the statute of limitations in an action brought by a prison inmate,

*see Houston v. Lack,* 487 U.S. 266, 270-76, 108 S. Ct. 2379, 2382-85

(1988); *Jones v. Waterbury Police Dep't*, No. 04CV2137, 2005 WL

1185723, at *2 (D. Conn. May 12, 2005), and his complaint would be

deemed timely.  Since application of the statute of limitations turns on

resolution of this issue, thereby presenting a material question of fact to be

resolved at trial, this would ordinarily suffice to provide a proper basis for

denial of defendants' motion.

In this instance, however, there is another, more fundamental basis

to reject defendants' statute of limitations defense.  Defendants' answer

asserts no defense based upon the relevant statute of limitations. *See* Answer (Dkt. No. 23) ¶¶ 26-31.  Since a defense predicated upon the relevant statute of limitations is affirmative in nature, and hence waivable, *Santos v. Dist. Council of New York City, et. al.*, 619 F.2d 963, 967 n.5 (2d Cir. 1980), I recommend denial of this portion of defendants' motion on the basis that the statute of limitations defense has been forfeited.  *United States v. Landau*, 155 F.3d 93, 107 (2d Cir. 1998) (finding waiver of defense of statue of limitations when raised in defendants' motion for summary judgment).

D.     Failure to Exhaust

In his complaint, plaintiff acknowledges that he failed to file and pursue to completion a grievance regarding the alleged use of excessive force on November 18, 2002, offering various explanations as to why his attempts to grieve the matter were thwarted by prison officials.  Defendants claim that plaintiff's complaint is therefore subject to dismissal based upon his failure to exhaust available administrative remedies before filing the action.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape

considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record."  *Jones v. Bock,* 549 U.S. 199, 204, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 548 U.S. at 91-92, 126 S. Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive

force or some other wrong." *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the DOCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[9]  7 N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance.  *Id.* §§ 701.4(b), 701.5(b).  If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision.  *Id.* § 701.5(c).  The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a basis to excuse

---

[9]     The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court. *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

In their motion, defendants argue that Murray, who is an experienced grievant, having processed approximately 175 grievances through appeal to the CORC, failed to file a timely grievance addressing the incident which forms the basis for his claims in this action. Once again, however, their answer fails to interpose exhaustion of the remedies as an affirmative defense. *See* Answer (Dkt. No. 23) ¶¶ 26-31. The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense that must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 549 U.S. at 212, 127 S. Ct. at 919. By not raising failure to exhaust as a defense in their answer, defendants have waived their right to now seek dismissal of plaintiff's complaint on that basis. *Handberry v. Thompson*, 446 F.3d 335, 342 (2d Cir. 2006).

E.    Personal Involvement

In their motion, defendants Goord and Girdich seek dismissal of plaintiff's claims against them, arguing that they had no personal

involvement in the events forming a basis for plaintiff's claims.  Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983.  *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 claim against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Plaintiff's claims against former Commissioner Goord and Superintendent Girdich are plainly based upon their supervisory positions and Murray's assertion that they must have known of the policies and practices of exposing double celled inmates at Upstate to unreasonable risk of harm and "tacit[ly] authorized the procedures which results in plaintiff being attacked."  Complaint (Dkt. No. 1) ¶¶ 6 (11)-(13).  A person in a supervisory capacity such as the DOCS Commissioner or a facility superintendent, however, cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d

Cir. 2003); *Wright*, 21 F.3d at 501.  Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.  *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . .  [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.").

Culpability on the part of a supervisory official for a civil rights violation can be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds, sub. nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (May 18, 2009); *see also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v.*

*Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).  In this instance the record is

devoid of any evidence from which a reasonable factfinder could conclude

that there existed at Upstate a policy or practice of exposing inmates to

unreasonable harm from double celling, and that Commissioner Goord or

Superintendent Girdich was aware of any such policy or practice.  *See*

Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 48-3) ¶ 7.  Absent

evidence of such awareness, neither supervisory official can be found to

have been grossly negligent in failing to act on information demonstrating

those constitutional violations.  *McCann v. Coughlin*, 698 F.2d 112, 125 (2d

Cir. 1983) (citations omitted).  Accordingly, I recommend that plaintiff's

claims against defendants Goord and Girdich be dismissed for lack of

personal involvement.

     F.    Merits of Plaintiff's Eighth Amendment Claims

     Plaintiff claims that defendants Ramsdell, Fregoe, and McGraw

forced him into a two-person SHU cell despite the fact that inmate Bradley

was physically accosting him at the time.  Complaint (Dkt. No. 1) ¶ 6(9).

Murray alleges that during the course of placing him into the double cell

those corrections officers punched him "about the body including testicles"

and violently shoved him causing him to hit the cement, metal doorway,

and door.  *Id.* ¶ 6(6).  Once plaintiff was in the cell, he maintains,

defendants did not immediately remove his restraints, thus allowing inmate Bradley to continue attacking him.  *Id.* ¶ 6(7).  Plaintiff claims that defendant Zerniak and an unidentified lieutenant were the "ring leaders" in connection with the incident, "sanctioning/directing" the use of force and failing to protect him.  *Id.* ¶ 6(10).

### 1.    Failure to Protect

The Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment, tasks prison officials with taking reasonable measures to guaranty the safety of inmates; included within this duty is the obligation to protect prisoners from harm caused by fellow inmates.  *Farmer  v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1977 (1994); *Matthews v. Armitage,* 36 F. Supp. 2d 121, 124-25 (N.D.N.Y. 1999).  When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1) he was incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight.  *Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Matthews*, 36 F. Supp. 2d at 124-25; *Coronado v. Lefevre*, 886 F. Supp. 220, 224 (N.D.N.Y. 1995) (Scullin, J.).  As can be seen, this analysis entails both an objective and subjective inquiry.

### a.   Objective Test

In objective terms, a plaintiff must prove that an alleged deprivation is "sufficiently serious" such that it denied him or her the "minimal civilized measure of life's necessities."  *Dawes v. Walker*, 239 F.3d 489, 493-94 (2d Cir. 2001) (internal quotations and citations omitted), *overruled on other grounds, sub. nom. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002).  Specifically, as noted above, in situations where an inmate's safety is at issue, that person must demonstrate that he or she was incarcerated under conditions posing a substantial risk of serious harm.  *Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Dawes*, 239 F.3d at 493; *Matthews*, 36 F. Supp. 2d at 124-25.

### b.   Subjective Test

To demonstrate that defendants were deliberately indifferent to his plight, a plaintiff must show that prison officials actually knew of, but disregarded, an excessive risk to his health and safety - "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Matthews*, 36 F. Supp. 2d at 124-25.

Claims involving the alleged failure of prison officials to protect an

inmate from harm are also subject to review under the Fourteenth Amendment's substantive due process provision.  Though the requisite mental state for establishing a Fourteenth Amendment failure to protect claim is somewhat unclear, it is at least apparent that to be legally cognizable under that provision, the actions alleged on the part of a defendant must transcend mere negligence.  *Davidson v. Cannon*, 474 U.S. 344, 347-48, 106 S. Ct. 668, 670 (1986) (lack of due care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent); *Daniels v. Williams*, 474 U.S. 327, 332, 106 S. Ct. 662, 666 (1986) (same); *Morales v. New York State Dep't of Corrs.*, 842 F.2d 27, 30 (2d Cir. 1988) (section 1983 does not provide cause of action for negligent failure of prison officials to protect an inmate from injury); *see also Abdul-Matiyn v. New York State Dept. of Corr. Servs.*, 871 F. Supp. 1542, 1546-47 (N.D.N.Y. 1994) (Chin, J.) (citing *Morales*).

In this case, plaintiff claims that the day before the incident at issue occurred, he was informed by Corrections Officer LaMare that inmate Bradley had threatened to cause himself, plaintiff, and/or LaMare bodily harm if he was double-celled.  Dkt. No. 1 ¶ 6(2).  Plaintiff states that he informed "them," which from the context I have interpreted to mean the

defendants other than Commissioner Goord and Superintendent Girdich, of inmate Bradley's threat.  Dkt. No. 1 ¶¶ 6(1), (2).

Regarding the objective prong of the test, I find that plaintiff has failed to allege sufficient facts to show that he was incarcerated under conditions posing a substantial risk of serious harm.  While plaintiff and inmate Bradley did end up in a physical altercation, Murray's claim that a corrections officer informed him that inmate Bradley threatened to physically harm him is insufficient to show there was a "substantial risk of serious harm."  *See Garcia v. Rodriguez*, No. 05 Civ. 5915, 2007 WL 2456631, at *2 (S.D.N.Y. Aug. 24, 2007) (holding that an isolated threat that an inmate would "get hurt" without any other present or past violent indications between the two inmates does not demonstrate a substantial risk of serious harm).

Moreover, even assuming plaintiff could demonstrate that a substantial risk of serious harm existed, he must also show, subjectively, that defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and. . . [drew] the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Matthews*, 36 F. Supp. 2d at 124-25.  To be sure, a reasonable factfinder could determine that the defendants other than Commissioner Goord and Superintendent

24

Girdich were aware of the fact that plaintiff was threatened by inmate

Bradley, since plaintiff claims to have told them as much.  Complaint (Dkt.

No. 1) ¶ 6(2).  The plaintiff must go further, however, and show that the

defendants actually inferred from that disclosure that a substantial risk of

serious harm existed.  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979;

*Matthews*, 36 F. Supp. 2d at 124-25.  Such a showing may be made by

demonstrating that "'a substantial risk of inmate attacks, was longstanding,

pervasive, well-documented, or expressly noted by prison officials in the

past, and the circumstances suggest that the defendant official being sued

had been exposed to information concerning the risk and thus must have

known about it.'"  *Saunders v. Ricks*, No. 9:30-CV-598, 2006 WL 3051792,

at *4 (N.D.N.Y. Oct. 18, 2006) (Hurd, J. and Lowe, M.J.)(citations omitted).

In this instance, plaintiff has not alleged any facts from which an inference

could be drawn that inmate Bradley's attack on him was a "longstanding,

pervasive, well-documented" risk and therefore that defendants were

actually aware of the risk. *See* Complaint (Dkt. No. 1).

As part of their motion, defendants have submitted a declaration

given by Donald Quinn detailing the process by which two inmates are

double-celled together.  Quinn Decl. (Dkt. No. 48-4) ¶¶ 7-8.  According to

Quinn, before two inmates are assigned as cellmates the DOCS assesses

their compatibility, an evaluation which includes reviewing both inmates' prior conflicts/violence, disciplinary history, gang affiliations, known enemies, and height and weight. *Id.* ¶¶ 7-8. If that analysis reveals that the two are suitable as cellmates, supervisors and officers at the correctional facility are next ordered to double-cell the inmates, while being attentive for signs of present danger between the two inmates. *Id.* ¶ 8.

The evaluation conducted by prison officials regarding the contemplated double celling of inmates Bradley and Murray resulted in the conclusion that the two inmates were compatible. Zerniak Decl. (Dkt. No. 48-5) ¶ 10; *see also* Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 48-3) ¶ 13. None of the defendants had any information, prior to the cell insertion, that Murray and Bradley had any history of conflict. Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 48-3) ¶ 14. Defendants Zerniak and Ramsdell both claim that in this particular instance neither plaintiff nor inmate Bradley said anything to each other or made any gestures indicating violent intent while they were being introduced into the two-person cell. Zerniak Decl. (Dkt. No. 48-5) ¶ 14; Ramsdell Decl. (Dkt. No. 48-7) ¶ 13.

Because plaintiff has failed to offer evidence from which a reasonable factfinder could objectively conclude that he faced a substantial risk of

serious harm and, subjectively, that defendants were aware of that risk, I recommend defendants' motion for summary judgment on plaintiff's failure to protect claim be granted.

2.   Excessive Force

In addition to asserting that they failed to protect him from a known risk of harm, plaintiff also contends that defendants and other corrections officers used excessive force while forcing him into the cell with inmate Bradley in that they "punche[d] [him] about the testicles" and violently shoved him into the cement and cell doorway, and in doing so violated his rights under the Eighth Amendment.  Complaint (Dkt. No. 1) ¶ 7, ¶ 6(6). Murray further claims that a retention strap that was placed on him was used to hurt him.  *Id.* ¶ 6 (7).  Defendants argue that there is no medical evidence by which plaintiff can substantiate this claim, and that any injury he suffered was *de minimis*.  Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 48-3) ¶ 27.

A plaintiff's constitutional right to be free from cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986) (citations and quotations omitted); *Griffen v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999).  The relevant inquiry in deciding excessive force claims against

27

prison officials is whether the force applied was done so in a "good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085.  Cruel and unusual punishment claims must meet both objective and subjective requirements.  *Leach v. Dufrain*, 103 F. Supp. 2d at 546 (citation omitted); *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.).

The objective prong of the governing test is analyzed by looking at "contemporary standards of decency" and the circumstances surrounding the incident.  *Leach*, 103 F. Supp. 2d at 546 (citation omitted); *Waldo*, 1998 WL 713809, at *2.  The subjective element requires a plaintiff show that the defendant acted with a sufficiently culpable state of mind.  *Id*.  The principal inquiry surrounds whether "force was applied in a good-faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 999 (1992); *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied, sub. nom.*, *John v. Johnson*, 414 U.S. 1033, 94 S. Ct. 468 (1973), rejected on other grounds by *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989)).

When evaluating excessive force claims, a court may consider the

extent of the injury suffered by the inmate plaintiff.  While relevant, it is not dispositive that a plaintiff does not suffer significant injury.  *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999.  Use of force that is *de minimis* can constitute cruel and unusual punishment if such use of force is "repugnant to the conscience of mankind."  *Id.* at 9-10, 112 S. Ct. at 1000 (citations omitted). It should be noted, however, that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  *Johnson*, 481 F.2d at 1033.  In addition to the extent of the inmate's injury, the court must also inquire as to the need for the use of force, whether the amount of force used was proportionate to the need, and whether the prison officials did anything to mitigate their use of force.  *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085 (citing, *inter alia*, *Johnson*, 481 F.2d at 1033).

According to the use of force report prepared in connection with the incident now at issue, plaintiff's injuries were not significant.  Quackenbush Decl. Exh. A (Dkt. No. 48-10) at p. 45.  As was previously stated, however, this alone does not prove that defendants did not use excessive force.[10] *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999.  Plaintiff initially claimed that he

---

[10]     The use of force report indicates that plaintiff had three small scratches, which were not bleeding, a few small red areas on his body and reddened wrists.  Use of Force Report (Dkt. No. 48-10 at p. 45).

suffered a bump on the head, his testicles hurt and were swollen, and that

his penis was bruised due to the use of force.   Quackenbush Decl. (Exh. A

(Dkt. No. 48-10) p. 42.  On the very next day, however, another inmate

injury report was filed regarding plaintiff in which he made no complaints of

any pain or discomfort at all.  *Id.* at p. 41.  While plaintiff may have suffered

injury due to the use of force, the *de minimis* nature of this injury is

demonstrated in that the record shows that after the initial examination

plaintiff did not complain of any pain or discomfort caused by the use of

force nor did he seek any further medical treatment for the pain in his penis

and testicles he initially claimed to have experienced.  *See* Dkt. No. 48-10;

*Cunningham v. Rodriguez*, 01 Civ. 1123, 2002 WL 31654960, at *5

(S.D.N.Y. Nov. 22, 2002) (plaintiff's injuries were *de minimis* where he

sought no further medical treatment after he was struck in the back and

face by an officer).

The record also fails to support plaintiff's version regarding the use of

force.  It appears that the only force exerted by corrections officers

occurred when plaintiff attempted to exit the cell as the door was being

closed.  *See* Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 48-3) ¶

20.  Based upon the record now before the court, no reasonable factfinder

could conclude that defendants exerted force that was not proportionate to

the need to further legitimate penological interests, including to follow the directive that Murray and his cellmate be placed together into a single two-person cell pursuant to instructions from their superiors.[11]

Even assuming plaintiff could meet the objective prong of the governing test, he must also prove that defendants acted with a sufficiently culpable state of mind, in that the use of force was wanton or malicious. *Hudson*, 503 U.S. at 6-7, 112 S. Ct. at 998; Whitley, 475 U.S. at 321, 106 S. Ct. at 1085 (quoting *Johnson*, 481 F.2d at 1033).  Plaintiff alleges that defendants' use of force occurred merely to insert him into the cell, and not in response to any disciplinary matter.  *See* Complaint (Dkt. No. 1) ¶¶ 6(6), (9).  This allegation not only fails to support but tends to contradict plaintiff's claim because it suggests that the force exerted was necessitated by his refusal to comply with legitimate directives that he enter and remain in the cell.  Plaintiff's statement to this effect is further

---

[11]     It is of course true that use of force which is *de minimis* can nonetheless constitute cruel and unusual punishment if such use of force is "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10, 112 S. Ct. at 1000.  In this instance the actions of defendants were captured on tape, through use of both an electronic surveillance system known as the "Loronix" system, and by a handheld video camera operated by a corrections officer.  *See* Ramsdell Decl. (Dkt. No. 48-7) ¶ 21.  I have reviewed the evidence regarding defendants' efforts to place Murray and Bradley into a cell together, including the surveillance tapes, and from the available record concluded that no reasonable factfinder could find that the use of force in this case rose to a level such that it was repugnant to the conscience of mankind or otherwise sufficient to support a cognizable Eighth Amendment claim.

substantiated by declarations provided by defendants Zerniak and

Ramsdell, who state that after Murray was placed in the cell with inmate

Bradley and the cell door was beginning to close, plaintiff attempted to run

out of the cell and wound up pinned by the door.  Zerniak Decl. (Dkt. No

48-5) at ¶ 17; Ramsdell Decl. (Dkt. No. 48-7) at ¶ 16.  Defendants Zerniak

and Ramsdell further claim that they used force to free plaintiff from the

door and place him in the cell.  *Id*.  In light of the statements from

defendants Zerniak and Ramsdell and the video footage of the incident

now before the court, I find plaintiff has failed to establish that a reasonable

factfinder could conclude that defendants' use of force was wanton and

malicious.  *Id.*; Quinn Decl. Exhs. A and B.

 In sum, because no reasonable factfinder could objectively find that

defendants' use of force with regard to plaintiff was excessive in light of the

circumstances presented, or, subjectively, that it was applied maliciously or

sadistically, I recommend dismissal of the excessive force component of

plaintiff's Eighth Amendment claim.

IV. <u>SUMMARY AND RECOMMENDATION</u>

 Finding that they have been waived by virtue of defendants'

failure to include them in their answer, I recommend against dismissal

of plaintiff's claims on either of the procedural grounds offered,

including on the basis of the affirmative defenses of statute of limitations and failure to exhaust.  Turning to the merits of plaintiff's claims, I find that he has failed to demonstrate the requisite degree of personal involvement on the part of defendants Goord and Girdich in the constitutional violations alleged, thus warranting dismissal of his claims against them.  Additionally, I find that plaintiff's failure to protect and excessive force claims are lacking in merit, and that no reasonable factfinder could return a verdict in his favor with regard to either of those claims, and therefore recommend dismissal of his complaint.  In view of the foregoing conclusions, I find it unnecessary to address defendants' additional argument asserting qualified immunity.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 48) be GRANTED, and that plaintiff's complaint in this action be DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to filed written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a),

6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

ORDERED that the Clerk of the Court serve a copy of this order

upon the parties in accordance with this court's local rules.


David E. Peebles
U.S. Magistrate Judge

Dated:      July 8, 2008
             Syracuse, NY